UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

DSQUARED2 TRADEMARKS LTD.,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.

_____/

## COMPLAINT

      Plaintiff, Dsquared2 Trademarks Ltd. ("Dsquared2"), by and through undersigned counsel, hereby sues Defendants, the Individuals, Partnerships, and Unincorporated Associations identified in the caption, which are set forth on Schedule "A" hereto (collectively, the "Defendants"), and allege as follows:

### NATURE OF THE ACTION

      1.    Defendants are promoting, selling, reproducing, offering for sale, and distributing goods using counterfeits and confusingly similar imitations of Plaintiff's trademarks within this district through various Internet based e-commerce stores and fully interactive commercial Internet websites operating under the seller identification names set forth on Schedule "A" hereto (the "Seller IDs").[1]

      2.    Like many other famous trademark owners, Plaintiff suffers ongoing daily and sustained violations of their trademark rights at the hands of counterfeiters and infringers, such as

---

[1] Plaintiff will be moving to file Schedule "A" under seal.

Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's trademarks, as well as the destruction of the legitimate market sector in which they operate.

3.    In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, Plaintiff has expended significant amounts of resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, particularly through online marketplace platforms, has created an environment that requires individuals, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and themselves from the negative effects of confusion and the erosion of the goodwill connected to Plaintiff's brand.

JURISDICTION AND VENUE

4.    This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement, false designation of origin under the Lanham Act, common law unfair competition; common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d), and The All Writs Act, 28 U.S.C. § 1651(a); 15 U.S.C. § 1051 *et seq*.

5.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1114 and 1125(a), 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

6.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, because the claims are so related to the trademark claims in this action, over which this

Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Defendants are subject to personal jurisdiction in this District because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this District through at least the Internet based e-commerce stores and fully interactive commercial Internet websites accessible in Florida and operating under the Seller IDs.  Upon information and belief, Defendants infringe Plaintiff's trademarks in this District by advertising, using, selling, promoting and distributing counterfeit trademark goods through such Internet based e-commerce stores and fully interactive commercial Internet websites.

8.      Venue is proper in this District pursuant 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this District by advertising, offering to sell, selling and/or shipping infringing products into this District.  Defendants may be found in this District, as they are subject to personal jurisdiction herein.

### THE PLAINTIFF

9.      Plaintiff is a limited company having its principal place of business in Dublin, Ireland.

10.      Plaintiff is the owners of all rights, title, and interest in several federally registered trademarks (the "Dsquared2 Marks").

11.      High-quality products under the Dsquared2 Marks are designed, marketed, and distributed in interstate commerce, including within this judicial district.

12.     The DSquared2 brand was launched in 1995 by brothers and fashion designers, Dean and Dan Caten, following a successful early career that included work with internationally acclaimed brands such as Versace and Diesel.

13.     The Dsquared2 brand quickly gained recognition with superstar celebrities, and thus, with the general public.  In 2000–01, Madonna commissioned the brothers to design over 150 pieces for her Drowned World Tour 2001 and "Don't Tell Me" music video.  In 2004, Naomi Campbell opened the Dsquared2 Fall show; in 2005, the Dsquared2 fashion show featured Christina Aguilera on the runway; in September 2007, the Dsquared2 fashion show in Milan featured Rihanna on the runway; in January 2010, the Dsquared2 Autumn/Winter 2010 menswear show in Milan was opened and closed by Bill Kaulitz; and recently, the DSquared2 Spring 2020 campaign featured Cher.  Other notable celebrities that have worn Dsquared2's famous designs include Brittney Spears, Justin Bieber, Justin Timberlake, Kendrick Lamar, Ricky Martin, Nicolas Cage, George Clooney, Lenny Kravitz, and Fergie.

14.     In June 2007, the first DSquared2 flagship was opened in Milan's fashion district, followed by multiple openings throughout Europe and Southeast Asia including its largest flagship store in London in 2015.  Presently, there are over one hundred (100) DSquared2 locations throughout the world, including stores located throughout the United States (and in this Judicial District).

15.     DSquared2 generates a significant amount of revenue through licensing arrangements with various third parties in a range of industries, including but not limited to Honda, Safilo, Euroitalia, Pepsi Max, and many more.

16.     Goods bearing and reproducing the Dsquared2 Marks are sold through authorized retailers throughout the United States, including within the State of Florida and this District.

Genuine and authorized products bearing and reproducing the Dsquared2 Marks are widely legitimately advertised, promoted, and distributed by and through Plaintiff's and their authorized partners, including but not limited to the following official online store and website: www.dsquared2.com/. Over the course of the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasingly important to Plaintiff's overall marketing and consumer education efforts. Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff and its authorized partners to educate consumers fairly and legitimately about the value associated with the Dsquared2 brand.

## THE DEFENDANTS

17.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities towards consumers throughout the United States, including within this district through the operation of Internet based e-commerce stores via Internet marketplace websites under the Seller IDs.

18.     Defendants are the past and present controlling forces behind the sale of products under counterfeits and infringements of Plaintiff's trademarks as described herein using at least the Seller IDs.

19.     Upon information and belief, Defendants directly engage in unfair competition by advertising, offering for sale, and selling goods bearing one or more of Plaintiff's trademarks to consumers within the United States and this District through Internet based e-commerce stores using, at least, the Seller IDs and additional seller identification aliases and domain names not yet known to Plaintiff.  Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

20.     Defendants have registered, established or purchased, and maintained their Seller IDs.  Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs.

21.     Upon information and belief, some Defendants have registered and/or maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

22.     Upon information and belief, Defendants will continue to register or acquire new seller identification aliases and domain names for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations of one or more of Plaintiff's trademarks unless preliminarily and permanently enjoined.

23.     Defendants use their Internet-based businesses in order to infringe the intellectual property rights of Plaintiff.

24.     Defendants' business names, *i.e.*, the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of counterfeit and infringing goods bearing one or more of Plaintiff's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.  Moreover, Defendants are

using Plaintiff's famous trademarks to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## GENERAL FACTUAL ALLEGATIONS

### *Plaintiff's Intellectual Property Rights*

25.     Plaintiff is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office:

| Trademark | Reg./Serial No. | Class of Goods and Services |
|-----------|-----------------|------------------------------|
| DSQUARED2 | 4,223,735 | IC 009: [ Scientific, nautical, surveying, photographic, cinematographic, optical, weighing, measuring, signaling, checking, life-saving and teaching apparatus and instruments, namely, cameras; apparatus and instruments for conducting, switching, transforming, accumulating, regulating or controlling electricity, namely, electric conductors, switches, transformers, accumulators, voltage regulators and controls; apparatus for recording, transmission or reproduction of sound or images; blank magnetic data carriers, blank recording disks; automatic vending machines and mechanisms for coin-operated apparatus; cash registers, calculating machines, data processing equipment and computers; fire extinguishers; ] spectacles; optical spectacles; optical glasses; sunglasses; [ goggles for sports; ] spectacle glasses; spectacle frames; [ audiovisual teaching apparatus, namely, multimedia projectors; barcode readers; ] spectacle cases [ ; anti-dazzle spectacles; binoculars; pince-nez cases; eyeglass chains; contact lenses; containers for contact lenses; optical correcting lenses; dressmakers' measures, namely, measuring tape; eyeglass cords; pince-nez mountings; protective eyepieces ] |
| DSQUARED2 | 4,806,182 | IC 025: footwear; caps for babies and children; bodysuits for babies and children; underpants for babies and children; footwear for babies and children; shirts for babies and children; tights for babies and children; suits for babies and children; vests for babies and children; gloves for babies and children; skirts for babies and |

| | | |
|---|---|---|
| | | children; trousers for babies and children; pullovers for babies and children; coats for babies and children; jeans for babies and children; t-shirts for babies and children; [ bathrobes for babies and children; ] parkas for babies and children; pajamas for babies and children; dresses for babies and children; shoes for babies and children [ ; uniforms for babies and children; imitation leather clothing for babies and children, namely, underpants, shirts, skirts, vests, coats; leather clothing for babies and children, namely, underpants, shirts, skirts, vests, coats ; bibs, namely, baby bibs not of paper, cloth bibs ]<br><br>IC 026: [ Lace and embroidery, ribbons and braid; ] buttons [, hooks and eyes, sewing pins and needles; artificial flowers; hair pins; spangles for clothing; elastic ribbons; eyelets for clothing; bows for the hair; hair bands; hair curling pins; hair nets; hair netting; false hair; barrettes hair-slides; hair grips slides; tresses of hair; plaited hair extensions; reins for guiding children; child restraining devices in the form of fabric harnesses for chairs; harnesses for guiding children ] |
| DSQUARED2 | 4,792,603 | IC 024: [ Textiles and textile goods, namely, bed and table linen; bed and table covers of textile, namely, bed and table linens; curtain holders of textile materials, namely, curtain loops of textile material; cloth flags; flags, namely, fabric flags; fabric table runners; bed covers; curtains of textiles or plastic; quilts and bedspreads; eiderdowns and down coverlets; cloth labels; textiles used as lining for clothing; mattress covers; unfitted furniture covers not of paper; covers for cushions and pillows, toilet gloves, namely, bath gloves; oilcloths; bed and travelling blankets; table covers, not of paper, namely, plastic; kitchen textiles, namely, kitchen towels; mosquito nets; ] handkerchiefs of textile; [ bath linen; household linen; bed sheets; sleeping bags in the nature of sheeting and place mats, not of paper; table napkins of textile; billiard cloth; textile wall hangings; ] traced cloths for embroidery; cloth, namely, cotton cloth, [ flax cloth; upholstery fabrics; ] towels of textile; textile face towels [ ; textile napkins for removing make up; curtains ] |
| DSQUARED2 | 4,599,398 | IC 003: [ Bleaching preparations and other substances for laundry use, namely, laundry detergents, laundry blueing, fabric softener for laundry use, laundry wax, laundry sizing, laundry starch, laundry glaze; cleaning, polishing, |

and abrasive preparations; degreasing preparations for precious metals, leather, cloths, footwear, headwear; ] soaps; perfumery, perfumes, [ essential oils, ] cosmetics, [ hair lotions; dentifrices; almond oil for cosmetic use; almond oil, namely, body oil; almond soaps; amber perfumery; depilatory creams; make-up removing products; lipstick; beauty mask; ] shaving preparations; [ preservative creams for polishing and buffing leather; leather protection creams; cosmetic preparations for slimming purposes; sunscreen and sun-tanning preparations; aromatics essential oils; fabric softeners; astringents for cosmetic purposes; cosmetic preparations for baths; bath salts, not for medical use; cotton sticks for cosmetic use; dental hygiene goods not for medical use, namely, mouth wash; hair lotions; dyes for hair; cosmetic preparations for eyelashes, namely, mascara; colorants for toilet purposes, namely, mouthwash; ] cosmetic creams; [ cosmetic sets comprising make-up and lipsticks; ] lotions for cosmetic purposes; [ pencils for cosmetic use; eaux de Cologne; lavender waters; scented linen water; toilet water; oils for cosmetic use; oils for toilet use; oils for perfumery; cleansing milk for toilet purposes; tissues impregnated with cosmetic lotions; make-up products, namely, powder, pencils, and foundations; ] cosmetic skin care preparations

IC014: [ Precious metals and their alloys; ] goods in precious metals or coated therewith, namely, jewelry, [ precious stones, timepieces and chronometric instruments; ] jewelry, [ precious stones; timepieces and chronometric instruments; ] jewelry and jewelry articles, namely, rings as jewelry, earrings, jewelry brooches, jewelry necklaces; silver products, excluding knives, forks and spoons, namely, jewelry; [ collectable coins; ] rings as jewelry; earrings; jewelry brooches; jewelry necklaces; [ tie pins; ] ornaments of precious metal in the nature of jewelry; [ artworks of precious metal; jewel cases of precious metal; watches; stopwatches; watch cases, watch bands, watch springs, watch chains, watch bezels; ] key rings of precious metal [ statues, figurines, statuettes of precious metal; cases and boxes for jewelry and timepieces; medals ]

IC 018: Leather and imitation leather, and goods made of these materials, namely, [ trunks and suitcases, leather briefsacks, ] handbags, rucksacks, [ wheeled bags, ] travel

bags; [ animal skins; trunks and suitcases; umbrellas and parasols; walking sticks; whips, harness and saddlery; ] business card holders in the nature of wallets; leather key cases; [ attaché cases; leather briefcases; animal skin, namely, moleskin; imitation leather; beach umbrellas; ] wallets; purses not of precious metal; handbags, rucksacks, [ wheeled bags, bags for campers in the nature of all-purpose carrying bags, ] travel bags, [ beach bags, ] school bags; toiletry cases sold empty; [ leather travelling sets, namely, luggage; ] toiletry bags and make-up bags sold empty; [ collars and clothing for animals; ] mesh shopping bags [ leather sachets and bags in the nature of envelopes and small bags for merchandise packaging ]

IC 025: Clothing, namely, pants, jackets, [ gloves, ] skirts, belts, footwear, headwear; shirts; clothing of leather or imitation leather, namely, shirts, pants, jackets, [ gloves, skirts, ] belts; women's clothing, namely, dresses, skirts, [ tights; ] clothing hoods; belts; [ gloves; ] sashes for wear; scarves; shawls; neckties; [ hosiery; ] socks; shoes; [ bedroom slippers; ] clothing for sports, skiing and the beach, namely, jackets, swimsuits, [ gloves, ] caps, scarves, jumpsuits, [ wetsuits, ] parkas, shorts, t-shirts, anti-perspirant t-shirts; underwear; coats; overalls; short-sleeved shirts; tee shirts; turtlenecks; [ slips; ] suits; trousers; jackets; pullovers; vests; sweaters; dresses; shirt yokes; shirt fronts; [ finished textile linings for garments; ] coats; stuff jackets; pelerines; [ gaberdines; ] waterproof clothing, namely, raincoats, boots, parkas, [ ponchos,; pockets for clothing; ] pocket squares; jerseys; knitwear clothing, namely, sweaters, dresses, pull overs [ body linen; dressing gowns ]

IC 035: [ Advertising; business management; business administration and office functions; business marketing and ] retail store services featuring perfumes, cosmetics, jewelry, goods of leather, [ and fur, ] travel bags, [ trunks, umbrellas, ] clothing, sportswear, headgear [ sunglasses, printed materials, accessories for hair; business management for licensing of goods and services for others; administrative processing of purchase orders; data systematization and compilation; demonstration of goods; distribution of samples; organization of events or trade fairs for commercial or advertising purposes; modeling for advertising and sales promotion; online advertising on a computer network; presentation of goods on

| | | |
|---|---|---|
| | | communication media for retail purposes; procurement services for others, namely, purchasing furniture, perfumes, cosmetics, jewelry, goods of leather and fur, travel bags, trunks, umbrellas, clothing, sportswear, headgear, sunglasses, printed materials, accessories for hair, all for other businesses; sales promotion for others; shop window dressing ] |
| DSQUARED | 4,340,392 | IC 025: Clothing, namely, pants, shirts, trousers, tops, shorts, dresses, skirts, sweaters, jackets, footwear, headgear, namely, hats, caps, visors; shirts; clothing made of leather or of imitation leather, namely, shirts, pants, jackets, [ gloves, skirts, ] belts; ladies' clothing, namely, blouses, skirts, pants, dresses, tops, bra, [ tights, ] underwear; [ hoods; ] belts; [ gloves; sashes for wear; ] scarves; shawls; neckties; hosiery; socks; shoes; slippers; clothing for sports, skiing and the beach, namely, swimsuits, [ gloves, ] caps, scarves, jumpsuits, [ wetsuits, ] parkas, shorts, t-shirts; [ babies' bibs of textile; babies' diapers of textile; ] underwear; coats; overalls; short-sleeved shirts; tee-shirts; turtlenecks; [ slips; ] suits; trousers; jackets; pullovers; [ waistcoats; ] sweaters; frocks; [ shirt yokes; shirt fronts; ready-made linings, namely, finished textile linings for garments; ] coats; stuff jackets; [ pelerines; ] waterproof clothing, namely, raincoat, boots, parkas; [ ponchos; pockets for clothing; pocket squares; jerseys; ] knitwear, namely, sweater, knit dresses, pull over, knit shirts, knit hats, knit tops, [ knit bottoms, ]knit jackets; underwear; [ dressing gowns; pajamas; cap peaks ] |
| ICON | 79309468 | IC 009: Sunglasses; eyewear; spectacles; pince-nez cases; chains for spectacles; contact lenses; containers for contact lenses; correcting lenses (optics); cords for spectacles; eyeglass frames and optical goods; none of the aforesaid goods in the field of electric meters; none of the aforesaid for use in relation to the power sports industry, including motorcycles, utility terrain vehicles, all-terrain vehicles, personal watercraft and snowmobiles; none of the aforementioned goods in relation to tools/products for professional craftsmen or work wear and protective equipment<br><br>IC 018: Leather and imitation leather; animal skins; trunks and suitcases; umbrellas and parasols; walking sticks; whips, harness and saddlery; card cases (wallets); key |

cases (leather goods); attaché cases; briefcases (leather goods), attache cases; document portfolios [cases]; moleskin (imitation leather), imitation leather; beach umbrellas; whips and saddlery goods; wallets; coin purses not of precious metal; handbags, backpacks, wheeled bags, bags for climbers, bags for campers, travel bags, beach bags, school bags; shopping bags; suitcases and boxes designed to contain toiletries; travel sets (leather goods); toiletry sets and make-up bags (empty); collars and clothing for animals; net bags for shopping; bags and net bags for shopping; bags and small bags (envelopes, pouches) of leather for packaging; none of the aforesaid for use in relation to the power sports industry, including motorcycles, utility terrain vehicles, all-terrain vehicles, personal watercraft and snowmobiles

IC 025: Clothing; footwear; headgear; shirts; clothing of leather or imitation leather; clothing items; women's clothing; men's clothing; clothing for children and babies; hoods (clothing); belts (clothing); gloves (clothing); sashes for wear; scarves; shawls; neckties; hosiery; socks; shoes; bedroom slippers; clothing for sports, skiing and the beach; swaddling clothes; underwear; coats; overalls; short-sleeved shirts; tee-shirts; turtlenecks; slips (underwear); suits; trousers; jackets; pullovers; vests; sweaters; dresses; shirt yokes; shirt fronts; ready-made linings (parts of clothing); stuff jackets; pelerines; gabardines (clothing); waterproof clothing; pockets for clothing; pocket squares; jerseys (clothing); knitwear (clothing); underwear (lingerie); dressing gowns; none of the aforesaid for use in relation to the power sports industry, including motorcycles, utility terrain vehicles, all-terrain vehicles, personal watercraft and snowmobiles; none of the aforementioned goods in relation to tools/products for professional craftsmen or work wear and protective equipment

IC 035: Retail services, online retail services and mail order retail services in relation to clothing, footwear, headgear, jewellery, precious stones, watches, clocks, precious metals and their alloys, bracelets, brooches, cufflinks, perfumery, cosmetics, skincare; retail services, online retail services and mail order retail services in relation to medals, ornaments, shoe ornaments, objects of imitation gold, ornamental pins, tie pins, tie clips and watch straps; retail services, online retail services and

| | | |
|---|---|---|
| | | mail order retail services in relation to leather and imitations of leather, bags, travelling bags, cases, suitcases, briefcases, straps of leather or imitation leather, handbags, garment bags, haversacks, rucksacks, trunks, purses, wallets, key cases, pouches, canes, sticks, saddlery and belts; advertising; marketing; promotional services; organisation, operation and supervision of loyalty programmes and of sales and promotional incentive schemes; fashion show exhibitions for commercial purposes; advertising and marketing services provided by means of social media; information, advisory and consultancy services in relation to the aforesaid services; none of the aforementioned services to be provided in connection with the power sports industry, including motorcycles, utility terrain vehicles, all-terrain vehicles, personal watercraft and snowmobiles |
| D2 | 4,603,602 | IC 014: Jewelry, [ precious stones; timepieces and chronometric instruments; ] jewelry and jewelry items, namely, bracelets, chains, [ brooches, rings, charms, collars, gemstones, diamonds, gold, watches and pins; metal coins, namely, collectible coins, commemorative coins, non-monetary coins; rings; earrings; brooches; ] necklaces; [ tie clips; works of art of precious metal; jewelry boxes of precious metal; watches; chronographs as watches; cases for clock- and watchmaking, bracelets, ] jewelry chains [, watch springs; key rings in the nature of trinkets or fobs, statues or figurines statuettes of precious metal; boxes and cases for watches and jewelry; medals ]<br><br>IC 018: Leather and imitations of leather; [ animal skins; trunks and] traveling bags; [ umbrellas, parasols and walking sticks; ] card holders and cases in the nature of pocket wallets; leather key cases; [ briefcases; moleskin; imitation leather; parasols; whips, harness and saddlery; ] pocket wallets; [ purses not of precious metal, handbags, backpacks, wheeled bags, bags for climbers in the nature of carry-all bags, bags for campers in the nature of carry-all bags, canvas, leather, textile or mesh shopping bags, beach bags; ] traveling bags [, school bags; valises designed to hold toiletries; leather traveling sets, namely, luggage; toilet bags sold empty; make-up bags sold empty; collars and clothing for animals; canvas, leather, textile or mesh bags and nets for shopping; leather sachets and bags in the nature of envelopes and small bags for merchandising packaging ] |

|  |  | IC 025: Clothing, namely, t-shirts, shirts, pull over, trousers, shorts, [ skirts, dresses, jackets, ] footwear, headgear, namely, headwear, caps, hats; shirts; [ clothing made of leather or of imitation leather, namely, trousers, shorts, skirts, dresses, jackets; ] ladies' clothing, namely, underwear, pants, bra, [ skirts, and dresses; ] hoods; belts; [ gloves ] sashes for wear; scarves; [ shawls; neckties; hosiery; socks; ] shoes; [ slippers; ] clothing for sports, [ skiing and ] the beach, namely, swimming suit, [ ski bibs, jumpsuits, ] antiperspirant t-shirts, [ babies' diapers of textile; ] underwear; [ coats; overalls; ] short-sleeved shirts; tee-shirts; turtlenecks; [ slips; suits; ] trousers; jackets; pullovers; [ waistcoats; ] sweaters; [ frocks; ] shirt yokes; shirt fronts; [ finished ready-made linings for clothing; coats; stuff jackets; pelerines; gabardines, namely, coat, suits, ] trousers, [ skirts; waterproof clothing, namely, raincoat, boots, parkas, ponchos; pockets for clothing; pocket squares; ] jerseys; knitwear, namely, [ tights, ] jersey, cardigan, knitted waistcoat; underwear; [ dressing gowns; pajamas; dressing gowns; ] cap peaks; underwear<br><br>IC 035: [ Business management services, namely, administration of business engaged in ready to wear articles and boutique, fashion accessories, perfumes, cosmetics, leatherwear and footwear; business administration; office functions; ] retail store services featuring [ perfumes, cosmetics, ] jewelry, goods of leather [ and fur ], traveling bags, [ trunks, umbrellas, ] clothing, sportswear, headgear [, sunglasses, printed materials, accessories for hair; business management for licensing of goods and services for others; administrative processing of purchase orders; data systemization and compilation; modeling for advertising and sales promotion; procurement, namely, purchasing leatherwear articles, clothing articles and footwear for others; shop window dressing ] |
|---|---|---|
| DEAN & DAN | 3,935,771 | IC 025: Clothing and leather clothing, namely, shirts, blouses, skirts, [ tailleurs, ]jackets, trousers, shorts, [ vests, ]t-shirts, [ socks, ]tank tops, [ foulards, ties, ]raincoats, overcoats, coats, swimwear, track suits, wind-resistant jackets, [ belts, ]footwear and headwear |

26.     The Dsquared2 Marks are used in connection with the design, marketing, and distribution of high-quality goods in at least the categories identified above.

27.     Long before Defendants began their infringing activities complained of herein, the Dsquared2 Marks had been used by Plaintiff in interstate commerce to identify and distinguish Plaintiff's products and merchandise for an extended period.

28.     The Dsquared2 Marks are well-known and famous and have been for many years. Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Dsquared2 Marks and products bearing the Dsquared2 Marks. The Dsquared2 Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

29.     Plaintiff has extensively used, advertised, and promoted the Dsquared2 Marks  in the United States in association with their merchandise.

30.     As a result of Plaintiff's efforts, members of the consuming public readily identify products and merchandise bearing or sold under the Dsquared2 Marks as being high quality goods sponsored and approved by Plaintiff.

31.     The Dsquared2 Marks serve as a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

### *Defendants' Counterfeiting and Infringing Conduct*

32.     Upon information and belief, Defendants are promoting and advertising, distributing, selling, and/or offering for sale counterfeit and infringing goods in interstate commerce using exact copies and confusingly similar copies of the Dsquared2 Marks through at least the Internet based e-commerce stores operating under the Seller IDs (collectively, the "Counterfeit Goods").  Plaintiff has used the Dsquared2 Marks extensively and continuously

before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

33.     Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially and materially different than that of Plaintiff's genuine goods.  Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff under the Dsquared2 Marks despite Defendants' knowledge that they are without authority to use the Dsquared2 Marks.  The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff.

34.     Defendants advertise their Counterfeit Goods for sale to the consuming public via e-commerce stores on Internet marketplace websites using at least the Seller IDs.  In so advertising these goods, Defendants improperly and unlawfully use the Dsquared2 Marks without Plaintiff's permission.

35.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the Dsquared2 Marks. Specifically, Defendants are using counterfeits and infringements of Plaintiff's famous Dsquared2 Marks in order to make their e-commerce stores and websites selling illegal goods appear more relevant, authentic, and attractive to consumers searching for Plaintiff's related goods and information online.  By their actions, Defendants are contributing to the creation

16

and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.  Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the goodwill associated with the Dsquared2 Marks, and/or (iii) increasing Plaintiff's overall cost to market the Dsquared2 Marks and educate consumers about their brand via the Internet.

36.     Upon information and belief, Defendants are concurrently targeting their counterfeiting and infringing activities toward consumers and causing harm within this District and elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

37.     Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Dsquared2 Marks, including their exclusive right to use and license such intellectual property and the goodwill associated therewith.

38.     Defendants' use of the Dsquared2 Marks, including the promotion and advertisement, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

39.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

40.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

41.     Upon information and belief, Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Seller IDs and any other alias seller identification names being used and/or controlled by them.

42.     Further, upon information and belief, Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Plaintiff.

43.     Plaintiff has no adequate remedy at law.

44.     Plaintiff is suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Dsquared2 Marks .

45.     The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

### COUNT I -- TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

46.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

47.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Dsquared2 Marks  in

commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

48.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods, using counterfeits and/or infringements of the Dsquared2 Marks. Defendants are continuously infringing and inducing others to infringe the Dsquared2 Marks by using one or more of them to advertise, promote, offer to sell, and/or sell at least counterfeit and infringing goods.

49.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

50.     Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable damage to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

51.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the Dsquared2 Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

52.     Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT II -- FALSE DESIGNATION OF ORIGIN
PURSUANT TO § 43(A) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

53.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

54.     Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of the Dsquared2 Marks  have been widely advertised and offered for sale throughout the United States via the Internet.

55.     Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of the Dsquared2 Marks  are virtually identical in appearance to Plaintiff's genuine goods.  However, Defendants' Counterfeit Goods are different in quality.  Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

56.     Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

57.     Defendants have authorized infringing uses of the Dsquared2 Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.  Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

58.     Additionally, Defendants are using counterfeits and infringements of the Dsquared2 Marks  in order to unfairly compete with Plaintiff and others for space within search engine organic results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the World Wide Web.

59.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

60.     Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III -- COMMON LAW UNFAIR COMPETITION

61.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

62.     This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods using marks which are virtually identical, both visually and phonetically, to the Dsquared2 Marks in violation of Florida's common law of unfair competition.

63.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing counterfeits and infringements of the Dsquared2 Marks. Defendants are also using counterfeits and infringements of the Dsquared2 Marks to unfairly compete with Plaintiff for (i) space in search engine results across an array of search terms and/or (ii) visibility on the World Wide Web.

64.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Dsquared2 Marks.

65.     Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

66.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

67.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing the Dsquared2 Marks.  Plaintiff is the owner of all common law rights in and to the Dsquared2 Marks.

68.     Specifically, Defendants, upon information and belief, are promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the Dsquared2 Marks.

69.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the Dsquared2 Marks.

70.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing,

counterfeiting, or diluting the Dsquared2 Marks; from using the Dsquared2 Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any counterfeit, copy, or colorable imitation of the Dsquared2 Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff's, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's Dsquared2 Marks; and from otherwise unfairly competing with Plaintiff.

B.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to the Seller IDs, and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Dsquared2 Marks.

C.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective Seller ID.

D.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court permanently remove any and all listings and associated images of goods bearing counterfeits and/or infringements of the Dsquared2 Marks via the e-commerce stores operating under the Seller IDs, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of the Dsquared2 Marks  associated with and/or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Dsquared2 Marks.

E.      Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of twenty thousand US dollars ($20,000.00) per each counterfeit trademark used and product type sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

F.      Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other alias seller identification or e-commerce store names, domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

G.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

H.      Entry of an order requiring Defendants to pay prejudgment interest according to law.

I.      Entry of an order for such other and further relief as the Court may deem proper and just.

Date:   December 20, 2023                    Respectfully submitted by,

                                             **Richard Guerra**
                                             Richard Guerra (Fla. Bar No. 689521)
                                             Email: rguerra@brickellip.com
                                             THE BRICKELL IP GROUP, PLLC
                                             1101 Brickell Avenue, South Tower, Suite 800
                                             Miami FL, 33131
                                             Telephone: (305) 728-8831
                                             *Attorneys for Plaintiff*